DELAP for the use of the trustees of STEWART, *against*
STEWART and McKNIGHT, surviving WRAY.

### IN ERROR.

S devised two plantations in trust, to apply the rents to the maintenance of his
brother and his family during his life; and bequeathed $1000, with directions to
apply the interest and any part of the principal which the trustees should deem
necessary, to the same object, and to divide the residue at the brother's death
among the children. A judgment was recovered against the brother and two
sureties; and having paid part of the debt, he and the sureties prevailed with
the trustees to advance the residue, on the credit of the judgment of which they
took an assignment. *Held:* that the judgment was not satisfied as against the
sureties, and that they were compellable to pay the same.

ERROR to the Common pleas of Adams county.

This was a *scire facias post annum et diem,* issued to revive
a judgment of record in the said Court in favor of *Charles De-
lap,* against *David Stewart, Thomas McKnight* and *Andrew
Wray,* of which on the 27th May, 1825, the plaintiff received
$77 13, from *David Stewart,* and the balance from *Isaac Wire-
man* and *Joseph Arendt,* trustees under the will of *Charles Stew-
art,* to whom he on that day assigned the balance of the said
judgment. Defence was taken to the *scire facias* by *Mr. McKnight*
on the ground, that he and *Wray* were the sureties of *David
Stewart* only, and as the payment of the judgment was made by
the trustees out of the trust fund, in which *David Stewart* had
the beneficial interest, it amounted to a payment of the judgment
as against the sureties.

Proof was made that *David Stewart* was the principal, and
*Mr. McKnight* and *Wray* were his sureties in the judgment,
and that the amount paid by the trustees was paid out of the trust
fund. These trustees were appointed by the will of *Charles
Stewart,* which so far as material in this suit was as follows:

"I devise to *J. Arendt, sen'r.* and *Isaac Wireman,* and their
heirs, my two plantations, situate in Menallen township, in the
county of Adams, to wit: the old farm on which I formerly
lived, and the farm purchased as the property late of *John Mac-
kley,* during the life-time of my brother *David Stewart,* to be
rented by them, and the rents to be applied by the same trustees
for the support and maintenance of the said *David Stewart,* and
such of his family as shall be with him, and to be paid at the dis-

cretion of the said trustees, in such sums and at such times as; they may think proper, he *to have no control over it."*

"Also, it is my will, and I do order and direct my executors. hereinafter named, to pay over to the said *John Arendt,* and Isaac *Wireman,* one thousand dollars, in good obligations now due, or the said one thousand dollars in money as soon as the same can be collected, out of the moneys due to me after my de cease, and to put it to interest, and the interest annually to be ap plied to the support and maintenance of my said brother *David Stewart,* and such of his family as continue to live with him; and should it happen from sickness or other circumstances that part of the principal in the opinion of the said trustees, be necessary for the comfortable support and maintenance of the said *D. Stew art,* they hereby are authorized to appropriate so much thereof as they in their discretion may judge necessary for the purposes aforesaid, and if at the death of the said *David,* the whole or any part of the said one thousand dollars, should be unexpended, then it is my will that the same be equally divided among all his chil dren, sharo and share alike, and their heirs."

*Wireman,* one of the trustees being objected to as a witness and the objection over-ruled by the Court, testified that all the parties. to the judgment requested the trustees to apply the trust fund in the way they had done; that *McKnight* had said it would be giv ing him or them time to pay it. That he was not present when it was paid, but it was paid with a view of purchasing the judg ment.

The plaintiffs requested the Court to charge the jury,

1. That if the money were advanced by *Arendt* to *Delap,* at the request of all the defendants, as a purchase of the judgment, and merely to give the defendant longer time to pay it in, and was not intended nor understood at the time by any of the parties to be an extinguishment or satisfaction of the judgment, but was agreed, understood and intended by all the parties still to remain good against all the defendants, that then the plaintiffs are enti- tled to recover.

2. That nothing contained in the assignment of said judgment, operates.as a legal extinguishment of said judgment, without and contrary to the intention and agreement of the parties.

The Court charged the Jury in the negative of these proposi tions, upon the evidence as given in the cause.

The verdict being for the defendant, the plaintiffs upon this writ of error, which they had sued out to the judgment entered

(Delap for use *v.* Stewart and McKnight.)

upon it, assigned for error, the answers of the Court to the points put by them, and to which they had excepted.

The cause was argued by

*Stevens* for the plaintiffs in error, and by

*Fuller* and *Carothers* (with whom was *Penrose,*) for the defendants—who referred to *Kessler* v. *McConachy*, 1 *Rawle*, 439, and *Keller* v. *Leib*, 1 *Penn. Rep.* 220.

The opinion of the Court was delivered by

GIBSON, C. J—The case is this: *Charles Stewart*, devised two plantations in trust to apply the rents to the maintenance of his brother and his family during his life : and bequeathed a thousand dollars, with directions to apply the interest and any part of the principal, which the trustees should deem necessary to the same object, and to divide the residue at the brother's death among his children. A creditor subsequently recovered a judgment against the brother and two sureties; and the brother-having paid part of the debt, he and the sureties prevailed with the trustees to advance the residue on the credit of the judgment which was assigned as a security : and the question is, whether any rule of law or equity forbids this as an investment of the trust fund.

It is a material part of the case, that the judgment remained unsatisfied at law. That the advancement should not be taken as payment, but as the consideration of an assignment, was an express condition of the agreement, which is to be executed, if at all, in all its parts. It is unnecessary to say what would have been the consequence of direct payment and a formal entry of satisfaction, as it is evident from the transfer of the ownership, that all parties considered the judgment to be an unsatisfied security. The defendants insist they have an equity that entitles them to turn the advancement into absolute payment, which, they allege, would be within the scope of their trust. It is apparent however, that such an equity would be in the face of their own agreement; and it is, beside, fallacious to assume that payment would be consistent with the trust. There is not a word in the directions to the trustees, that looks to any thing beyond personal maintenance and support. On the contrary, the obvious purpose of the trust was to guard the testator's bounty from interception by creditors. It is said that to relieve the brother's household goods from the pressure of an execution, would conduce directly to the purpose. Certainly it would. But to relieve them by paying the debt, instead of purchasing them in, would leave them exposed to other creditors, as well as subject them to the disposition of the brother, who was to have no control over the trust property. In

(Delap for use *v.* Stewart and McKnight.)

fact, the fund might be exhausted in payment of debts, without accomplishing a single object of the trust. Nor could the trustees have safely paid the money to the *cestuy que trust,* with permission to use it at his pleasure. To put any part of the fund into his hands, would have been inconsistent with their duty in preventing him from having a control over it. Being interposed to prevent him from wasting it, they would have confided the application of it to him at their peril, and any connivance with him to divert it from the prescribed object, would have been a breach of trust. The argument, then, that payment with his approbation, would be equivalent to payment to himself, is without force, because without foundation. The trustees had indeed, power to break in on the principal, in case they should think it necessary; but a plain answer to any inference from this, is that they have in fact, *not* thought it necessary.

By taking a security for what they advanced, they took care not to leave that matter in doubt. It is the sureties who attempt to break in on the principal against the consent of the trustees, and with a view to their own advantage. It is said, however, that to sanction the transfer, would enable the trustees to sell the *cestuy que trust* out of house and home. I see nothing in that. If the property were bought in by them, it would be held under the trust for his use; and if bought by strangers, the proceeds would be part of the fund, and he would be entitled to the benefit of it. The fallacy is in considering the transfer as being to the trustees in their own right. The use they should make of it, would depend on their discretion, which, it is fair to presume, would be exercised with a single eye to his advantage, as a failure in this particular, would render them liable for a breach of trust.

So far is the judgment from being necessarily an instrument of oppression, that it may be the only efficient means of preserving the property for his use. But having obtained the ownership of it, they are not compellable to use it for the advantage of the sureties, who are entitled to no benefit *from* the trust, the objects of which are unconnected with their equity against the *cestuy que trust,* as their principal. Would it not then be monstrous to permit the defendants after having seduced the trustees into the particular measure, to profit by it at the expense of the trust, and in the teeth of their own agreement? If the judgment creditor, the trustees, and the defendants have agreed that the transaction shall be a purchase and not a payment, what policy, or principle of law, requires them, without fraud or misrepresentation, to be cut loose from their agreement? The arrangement gave the defendants the benefit of delay, and probably saved their property.

(Delap for use *v* Stewart and McKnight.)

from being sacrificed; so that an objection to the validity of it, comes from them with a bad grace. But I am unable to see any defect in it, even without their assent. The trustees have nothing to do with equities between principal and surety. Their duty is limited to an administration of the fund, to the maintenance of the *cestuy que trust*, and distribution of it, at his death, among his children; and to effect this, they may collect the money from all or any of the parties legally liable, leaving to them their remedies against each other, with which the trustees have nothing to do. If the sureties fail in obtaining satisfaction to be made by the principal, they will be in at least as good condition as they were before the arrangement; but they can not manage matters so as to procure payment to be made out of the trust fund, at the expense of the trustees or the persons ultimately entitled.

HUSTON, J.—dissented.

Judgment affirmed.